# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:12-cr-221-MHT** |
| | ) | |
| **WILLIE C. MOODY** | ) | |

## DEFENDANT'S MOTION FOR A NEW TRIAL

COMES NOW the defendant, Willie C. Moody, by and through his counsel of record, in the above-styled matter, and respectfully moves this Honorable Court, pursuant to Fed. R. Crim. P. 33, for a new trial. In support thereof, the defendant shows the following.

## FACTS AND PROCEDURAL HISTORY

1. The Defendant was named in a second superseding indictment (hereinafter referred to as "the indictment") filed on November 14, 2013 with (1) one count of conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, (2) three counts of possession with the intent to distribute and distribution of methamphetamine, and (3) fourteen counts of using a communication facility to further the drug conspiracy. (Doc 266)

2. Jury selection took place on March 24, 2014 and the trial commenced immediately after the jury was struck. The Jury found the defendant guilty of all counts on March 27, 2014, with the exception that the defendant was found guilty of less than 50 grams of methamphetamine as to count 1. At trial, the defense moved for a judgment of acquittal at the end of the government's case as well as at the end of trial. The Court denied the defendant's motions for judgment of acquittal.

3. The government alleged that the defendant, Mark Elliott, Tracy Dassel, and others conspired together to possess with the intent to distribute and distribution of methamphetamine. The government further alleged that, on three separate occasions, the defendant sold methamphetamine to

a confidential source, Billy Jarrett. Finally, the government alleged that the defendant used a cell phone to communicate with Mark Elliott on multiple occasions and Tracy Dassel (on one occasion) to further the conspiracy as alleged in count 1 of the indictment.

**DISCUSSION**

I. Introduction and Authority

4. If a judgment of acquittal is not granted, but the evidence preponderates heavily against the jury's verdict of guilty, such that it would be a miscarriage of justice to let the verdict stand, a new trial is warranted. *United States v. Martinez*, 763 F. 2d 1297 (11th Cir. 1985).

5. When considering a motion for new trial, the Court (1) does not have to view the evidence in the light most favorable to the government/verdict, and, (2) the Court may weigh the evidence and consider the credibility of witnesses. *United States v. Hernandez*, 433 F. 3d 1328, 1335 (11th Cir. 2005). This Court has broad discretion in determining whether a new trial is warranted. *United States v. Pedrick*, 181 F. 3d 1264 (11th Cir. 1999).

II. The government's case

6. Notwithstanding the government's multiple witnesses called at trial, the government's case relied substantially on the testimony of William Elliott and Billy Jarrett.

   a. William Elliott

7. William Elliott (otherwise known as Bill Elliott) was a co-defendant in the instant matter. His brother, Mark Elliott, was the person the government pointed to as the leader of the drug conspiracy as alleged in count 1. Bill Elliott testified that he sold an 8-ball on one occasion to the defendant and the defendant's brother. Elliott was also the witness that identified the defendant on the multiple telephone calls played in court to the jury that relate to counts 5 through 18 of the indictment. Elliott was further asked to speculate about the meaning of language used during the

telephone recordings. Elliott was not a participant in any of the telephone calls recorded and did not know the context in which the communications were exchanged. As such, Elliott was not in a position to testify about what certain phrases meant especially given that these phrases, on their face, had nothing to do with the drug trade. Very little weight should be afforded to Elliott's testimony.

8. Elliott had a reason to lie during his testimony. He was testifying pursuant to a cooperation agreement wherein he was trying to reduce his own sentence by testifying against the defendant. Elliott admitted during his testimony that he anticipated that his sentence could be reduced from about 20 years in prison to 10 years in prison due to his testimony against the defendant.

9. A primary reason to call Bill Elliott as a witness was to have him identify the voices on the telephone calls associated with counts 5 through 18. Elliott was clearly able to identify his brother's voice and articulate a reasonable basis for his identification, i.e., they were brothers and, having grown up together, he was very familiar with Mark Elliott's voice. Bill Elliott's identification of the defendant's voice, however, was suspect. He testified that he interacted with the defendant only a few times in his lifetime. Furthermore, the last time Bill Elliott even heard the defendant's voice was more than a year before the trial (during which he was asked to identify the defendant's voice on the phone recordings). Given Elliott's desire to help himself pursuant to his plea agreement, and the few times Elliott could have heard the defendant's voice, Elliott's testimony identifying the defendant as one of the participants in the phone recordings related to counts 5 through 18 is so suspect so as to preponderate against the jury's verdict resulting in a miscarriage of justice.

10. To further call Bill Elliott's testimony in to question is his, at best, inaccurate testimony about his own criminal history. On direct examination, he testified about two convictions

he had in the 1970s and a conviction he had in the 1990s. On cross examination he admitted that he had a drug-related conviction about 8 years ago. While he wanted to explain that he simply forgot about the most recent drug-related conviction, it stands to reason that Elliott would remember a conviction he had about 8 years ago as opposed to convictions he had nearly 40 years ago. Additionally, there was substantial testimony about a domestic violence conviction Elliott had about 14 years ago. Elliott wanted the jury to believe that he simply did not remember the circumstances of that conviction while, at the same time, he was insistent about specific details related to his attorney and an alleged mishap with the courtroom Elliott was supposed to be in for his case. Bill Elliott's false testimony about his previous convictions goes to support the position that he intentionally attempted to downplay his criminal history as a means of gaining favor in the jury's view.

    b.  <u>Billy Jarrett</u>

  11.  Billy Jarrett testified that he purchased about an ounce of methamphetamine from the defendant on three separate occasions comprising counts 2 through 4 of the indictment. As a confidential source, Mr. Jarrett wore video-recording equipment on each of the three occasions. Viewing the video from each of the recordings, at no point are there any drugs depicted. The government argued to the jury that it is not reasonable to expect an informant to capture the "magic moment" wherein drugs and payment are exchanged. In truth, the informant has an understanding of where the camera is on his person as well as the view the recording is going to capture (especially after having engaged in three separate such buys). By failing to capture any drugs on the video, the Court is left with Billy Jarrett's testimony that drugs were actually purchased from the defendant. Given that no drugs were recorded on video, a reasonable question is whether there were any drugs in the first place.

12. Jarrett, the same as Bill Elliott, had a reason to lie. The whole reason he was involved in this case was an attempt to set up the defendant because Jarrett, himself, was in trouble for being caught with methamphetamine. The consequences for Jarrett being caught in possession of methamphetamine depended on his testimony in the defendant's case. Similar to Elliott, Jarrett also downplayed his criminal history and, in fact, misrepresented his criminal history to the jury. It was not until he was confronted during cross examination that he finally admitted to additional criminal history to which he did not testify during direct examination. In addition, Jarrett minimized his drug history when he failed to disclose to the jury during direct examination that he had previously had a problem with cocaine in addition to marijuana and methamphetamine.

13. It should also be noted how evasive Jarrett was during cross examination. While he had no trouble hearing and understanding the government's questions during direct examination, he behaved as if he suddenly could not understand the English language during the undersigned's cross examination. Jarrett's evasiveness during cross examination should be considered in determining the weight that should be given to his testimony. As with Elliott, the weight given to Jarrett's testimony is so minimal that reliance upon his testimony for any of the convictions in this case would result in a miscarriage of justice.

III. The defense case

14. The defense presented two witnesses, i.e., Jerry Wills and Jason Moody. Jerry Wills has known the defendant for 25 years or more. Mr. Wills is a successful businessman in the Montgomery area and well respected. Mr. Wills testified that he has had regular contact with the defendant over the years that he has known the defendant and that he has never known the defendant to sell or distribute drugs. Jason Moody, the defendant's son, testified that he has known that his father used drugs, but he insisted that he has never known his father to distribute drugs.

15. Both Mr. Wills and Mr. Moody are credible witnesses. They are the two witnesses that know the defendant best and in the best position to testify about whether the defendant distributes drugs. Neither witness was testifying due to a plea agreement or, unlike Elliott and Jarrett, in order to reduce any criminal sentence they may receive. Their testimony that the defendant is not a drug dealer is corroborated by the fact that no fingerprints belonging to the defendant was found on any of the evidence in this case. Further, no significant amounts of money or drugs were found during the search of the defendant's residence in Montgomery or at the cabin in Elmore County.

## CONCLUSION

16. As noted, the Court, in considering a motion for new trial, is permitted to weigh the evidence presented and the credibility of witnesses during the trial in considering whether to grant a new trial. *See United States v. Hernandez*, 433 F. 3d 1328, 1335 (11th Cir. 2005). The defense prays this Court will consider the dishonest testimony from the government's primary witnesses (i.e., Bill Elliott and Billy Jarrett), assess the weight that should be given their testimony as minimal to none, and, considering the testimony from Mr. Wills and Mr. Moody, and grant the defendant a new trial.

  s/David R. Clark  
**DAVID R. CLARK (CLA078)**  
Attorney for Willie C. Moody  
830 Peachtree Street  
Prattville, Alabama 36066  
TEL: (334) 361-7750  
FAX: (334) 361-7748  
E-mail: david@attorneydavidclark.com

CERTIFICATE OF SERVICE

       I hereby certify that on April 10, 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: <u>Verne Speirs, Esq.,</u> and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:
None.

    /s/David R. Clark
**DAVID R. CLARK (CLA078)**
Attorney for Willie C. Moody
830 Peachtree Street
Prattville, Alabama 36066
TEL: (334) 361-7750
FAX: (334) 361-7748
E-mail: david@attorneydavidclark.com