IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:12cr221-MHT |
| WILLIE C. MOODY | ) | (WO) |

CORRECTED OPINION AND ORDER

A jury convicted defendant Willie C. Moody of several drug offenses. Pursuant to 21 U.S.C. § 853 and as a result of the convictions, the government seeks forfeiture of two parcels of real property and nine firearms. Both the government and Moody waived a jury trial on the issue of forfeiture. Based on the evidence presented to the jury and at a supplemental bench hearing, the court holds that Moody's interest in the real property should be forfeited, but that his interest in the firearms should not.

I. Background

The jury convicted Moody of conspiracy to distribute and possess with intent to distribute less than 50 grams

of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 1); possession with intent to distribute and distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Counts 2-4); and use of a communication facility in committing those offenses in violation of 21 U.S.C. § 843(b) (Counts 5–18).

Evidence presented in support of these convictions included the following: Moody would buy methamphetamine from a larger distributor named Mark Elliott and would subsequently sell the drugs to others. Moody's drug activity was uncovered in part through several wiretaps in October 2012 in which he and Elliott arranged drug deals. Further, on three separate occasions in September, October, and December 2012, law-enforcement officials conducted controlled buys between Moody and a confidential informant at the gate on Moody's property located at 9555 Central Plank Road in Wetumpka, Alabama. The confidential informant wore a video camera to each of

the three controlled buys and captured his interactions with Moody.

The Central Plank Road property, which the government seeks to have forfeited, consists of the two parcels. The first parcel is 162.01 acres and includes a cabin, a pond, and woods. The parcel is land-locked, and the land and cabin, when combined, are valued at $ 593,700. The second parcel is 4.61 acres and consists of mostly a driveway that provides access from a road to the cabin. On the second parcel there is a metal gate that restricts access to the driveway as well as to the cabin and surrounding property. The second parcel is valued at $ 18,630. The two parcels have separate legal descriptions and tax assessments, but were conveyed together in a single deed. Moody claims a one-half interest in each of the two parcels.

The nine firearms sought by the government are a Winchester, model 70 XTR, .270 caliber rifle; a .410 shotgun from an unknown manufacturer; a Remington Arms

Company, Inc., model 870, 12 gauge shotgun; a Remington Arms Company, Inc., model 522, .22 caliber rifle; a Remington Arms Company, Inc., model 1100, 12 gauge shotgun; a Remington Arms Company, Inc., model 572, .22 caliber rifle; a Rossi rifle; another Remington Arms Company, Inc., model 522, .22 caliber rifle; and a Remington Arms Company, Inc., model 742, 30-06 rifle.

## II. Applicable Law

"Any person convicted of [certain specified drug crimes] punishable by imprisonment for more than one year shall forfeit to the United States ... any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853(a)(2).

"As soon as practical after a verdict or finding of guilty ... on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture

under the applicable statute." Fed.R.Crim.P. 32.2(b)(1)(A). "If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Id. The nexus may be established by a preponderance of the evidence. United States v. Dicter, 198 F.3d 1284, 1289 (11th Cir. 1999).

Thus, for the two parcels and the nine firearms to be forfeited, the government must show by a preponderance of the evidence that the parcels and firearms were "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of," the drug activity in this case. 21 U.S.C. § 853(a)(2).

### III. Discussion

#### A. Property Subject to Forfeiture

The court finds that both parcels of real property should be forfeited. However, because the court is not convinced of the requisite nexus between the firearms and

the drug activity, the court finds that the firearms are not subject to forfeiture.

### 1. The Two Parcels of Real Property

Both Central Plank Road parcels facilitated Moody's drug activity in this case. See 21 U.S.C. § 853(a)(2). Trial testimony and confidential-informant videos reflect that Moody engaged in drug transactions at the gate on the smaller parcel. Further, the wiretap recordings and trial testimony reflect that he used the cabin as a safe location to engage in drug trafficking and that he made calls from the cabin to organize drug transactions. Moreover, the remote nature of the land and the presence at the cabin of drug paraphernalia and methamphetamine residue provide additional evidence that the cabin facilitated Moody's drug trafficking. The court, therefore, finds that the government has established by a preponderance of the evidence the requisite drug nexus for forfeiture of both parcels of property. See, e.g.,

United States v. Zuniga, 835 F. Supp. 622, 624 (M.D. Fla. 1993) (Merryday, J.) (holding that phone calls made from the defendant's home to commit, or to facilitate the commission of, the defendant's drug offenses warranted forfeiture of the home), aff'd, 46 F.3d 69 (11th Cir. 1995) (table). Moreover, because both parcels are forfeitable individually, the court need not rely on the government's argument that both parcels would be subject to forfeiture based solely on an established nexus with the smaller parcel--though, because the two parcels were indivisible in use, that argument has merit.

### 2. The Nine Firearms

As a preliminary matter, the government asserts that the firearms are subject to forfeiture simply because Moody is now a felon, and, as a felon, he cannot possess a firearm. The government's argument fails, however, because the issue of whether Moody's firearms are subject to forfeiture (an issue concerning the complete

7

deprivation of Moody's property interest, whether he has any or not, in the firearms) is separate from whether the firearms can be returned to Moody (an issue concerning whether Moody has a possessory interest in the firearms). See generally United States v. Howell, 425 F.3d 971, 977 n.4 (11th Cir. 2005) (distinguishing between the court's holding that a court cannot return firearms to a felon and the potential for a felon to file an action to recover the value of the firearms).

Moody claims an interest in only three of the nine firearms in this case, namely the .410 shotgun from an unknown manufacturer; the Remington Arms, Co., Inc., model 870, 12 gauge shotgun; and the Remington Arms Co., Inc., model 1100, 12 gauge shotgun. These three firearms were stored in a gun safe in the master bedroom of Moody's Montgomery residence. No other evidence was presented about these three firearms, their location, or their connection to Moody's drug offenses.

As to Moody's Montgomery residence, the evidence reflects that Moody arranged to purchase drugs from Mark Elliott and that Elliott was then followed by law-enforcement officers to Moody's residence; this evidence establishes a link between the Montgomery residence and Moody's drug activity.  However, even with this link, the government has provided no evidence of the link between the firearms and Moody's drug activity.  Indeed, there is no evidence of the circumstances relating to the firearms, their storage, and their use, if any, in the drug activity.  Further, there has been no evidence as to the accessibility of the firearms, such as what type of gun safe stored the firearms or how easy the safe might be opened, as to indicate that the firearms might have been used for protection.  Beyond the fact that the three firearms were located in Moody's Montgomery residence, and beyond the government's assertion that firearms are generally viewed as 'tools of the trade' in drug cases, no additional evidence or argument has been presented as

9

to these three firearms. As a result, the court is not convinced by a preponderance of the evidence that the firearms were "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the drug activity in this case. 21 U.S.C. § 853(a)(2). Thus, the government has failed to establish the requisite nexus between the firearms in this case and Moody's drug activity, and the three firearms in which Moody claims an interest are not subject to forfeiture. See <u>Dicter</u>, 198 F.3d at 1289.

As to the remaining six firearms, four of the six firearms were stored with Moody's firearms in the gun safe in the master bedroom of Moody's Montgomery residence. Moody claims no interest in these four firearms, but asserts that they belong to his sons. Moreover, as to these four, for the reasons discussed as to Moody's three claimed firearms and in light of the additional fact that Moody claims no interest in any of

these firearms, the court finds that they are not subject to forfeiture.

As to the remaining two firearms, they were discovered at Moody's cabin located at 9555 Central Plank Road in Wetumpka, but Moody does not claim any interest in these two firearms. As discussed, the government has established a drug nexus to the Central Plank Road property. However, and as with the firearms discovered at Moody's Montgomery residence, the government has not presented any evidence of the circumstances in which the firearms were found. The government has not presented evidence of where the two firearms were placed in the cabin, whether they were readily accessible, or whether they were used in any way in Moody's drug activity. Thus, because of this lack of evidence, and, again, in light of the fact that Moody claims no interest in the two firearms located at the Central Plank Road property, those firearms are not subject to forfeiture.

Thus, the court finds that none of the nine firearms are subject to forfeiture. However, with these findings, the court should not be understood to hold that, as a convicted felon, Moody is entitled to the return of any of the firearms; indeed, he does not claim any interest in six of them and thus is not entitled to their return.

B.  **Excessive Fine Argument**

Finally, Moody argues that the forfeiture of both parcels of the Central Plank Road property would constitute an excessive fine in violation of the Eighth Amendment. Specifically, he argues that, because he "received a little more than $ 300.00 for the three controlled buys" at the gate, forfeiture of his interest in both parcels would be excessive. Def.'s response (Doc. No. 527) at ¶ 24.

Forfeiture of the two parcels of real property is not excessive under the Eighth Amendment. Rather, and as Moody concedes, the value of the property to be forfeited

is less than the maximum fine set forth in both the statute and the U.S. Sentencing Guidelines. As a result, the forfeiture of both parcels of property is not excessive. "If the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional"; and, "if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive." <u>United States v. 817 Ne. 29th Drive, Wilton Manors, Fla.</u>, 175 F.3d 1304, 1309-10 (11th Cir. 1999).

***

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The nine firearms are not subject to forfeiture, and it is DECLARED as follows:

(a) Because the government has failed to present sufficient evidence as to warrant forfeiture, the following three firearms are not forfeited:

> (i) The .410 shotgun from an unknown manufacturer; (ii) the Remington Arms, Co., Inc., model 870, 12 gauge shotgun; and (iii) the Remington Arms Company, Inc., model 1100, 12 gauge shotgun.

(b) Because the government has failed to present sufficient evidence as to warrant forfeiture, and in light of the fact that Moody does not claim an interest in any of these firearms, the following six firearms are not subject to forfeiture:

> (i) The Winchester, model 70 XTR, .270 caliber rifle; (ii) the Remington Arms Company, Inc., model 522, .22 caliber rifle; (iii) the Remington Arms Company, Inc., model 572, .22 caliber rifle; (iv) the Rossi rifle; (v) another Remington Arms Company, Inc., model 522 .22 caliber rifle; and (vi) the Remington Arms Company, Inc., model 742, 30-06 rifle.

Although these nine firearms are not forfeited, the court is not saying that, as a convicted felon, defendant Moody is entitled to repossess them.

(2) All of defendant Moody's interest in the two parcels of real property located at 9555 Central Plank Road, Wetumpka, Elmore County, Alabama, is subject to forfeiture to the government.

(3) Pursuant to Fed.R.Crim.P. 32.2, a separate preliminary order of forfeiture will be entered as to the two parcels of real property located at 9555 Central Plank Road, Wetumpka, Elmore County, Alabama.

DONE, this the 4th day of June, 2014.

                             /s/ Myron H. Thompson
                             **UNITED STATES DISTRICT JUDGE**